# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## APPEAL NUMBER: 22-13073-JJ

_____

### TYLER M. COPELAND,

**Appellant**

**v.**

### GEORGIA DEPARTMENT OF CORRECTIONS,

**Appellee**

_____

**Appeal from the United States District Court**
**for the Southern District of Georgia**
**Statesboro Division**

**Case Number:   6:20-cv-00057-JRH-BKE**

_____

**BRIEF OF APPELLEE**

_____

**G. Todd Carter**
**Brown, Readdick, Bumgartner,**
**Carter, Strickland & Watkins, LLP**
**5 Glynn Avenue, Brunswick, Georgia 31520**
**(912) 264-8544**

**Special Assistant Attorney General**
**ATTORNEY FOR APPELLEE**

*Tyler M. Copeland v. Georgia*
*Department of Corrections*
*Appeal Number: 22-13073-JJ*

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

The undersigned Counsel of Record for Defendant/Appellee Georgia Department of Corrections, in accordance with Rule 26.1 of the United States Court of Appeals, Eleventh Circuit, certify that the following is a full and complete list of all persons, firms, associations, partnerships, and corporations, including subsidiaries, conglomerates, affiliates, parent corporations, and other legal entities having an interest in the outcome of this case:

Barton III, Kenneth E.

Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP

Calderon, Tovah R.

Carr, Honorable Chris

Carter, G. Todd

Clarke, Kristen

Cooper, Barton & Cooper, LLP

Cooper, Ashley A.

C1 of 3

*Tyler M. Copeland v. Georgia*
*Department of Corrections*
*Appeal Number: 22-13073-JJ*

Cooper, M. Devlin

Copeland, Tyler M.

Department of Administrative Services

Georgia Department of Corrections

Hall, Honorable J. Randall

Lee, Jason

State of Georgia

U.S. Department of Justice

Appellee, Georgia Department of Corrections further states that it is not aware

of any information or parties required to be disclosed pursuant to Federal Rule of

Appellate Procedure 26.1

This 20th day of January, 2023.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar Number: 113601
BROWN, READDICK, BUMGARTNER
CARTER, STRICKLAND & WATKINS, LLP

C2 of 3

Special Assistant Attorney General
ATTORNEY FOR APPELLEE
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521-0220
(912) 264-8544
(912) 264-9667 FAX
tcarter@brbcsw.com

*Tyler M. Copeland v. Georgia*
*Department of Corrections*
*Appeal Number: 22-13073-JJ*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Georgia Department of Corrections does not request oral argument.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE
STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1 of C-3

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT AND CITATION OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

## TABLE OF AUTHORITIES

**Federal Cases**

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir.1998) . . . . . . . . . . . . . . .  8

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999) . . . . . . . . . . . . 13

*Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1995) . . . . . . . . . . . . . .  9

*Black v. Zaring Homes, Inc.,* 104 F.3d 822 (6th Cir.1997) . . . . . . . . . . . . . . . .  9

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) . . . . . . . . .  12

*Chapman v. AI Transport,* 229 F.3d. 1012 (11th Cir. 2000) . . . . . . . . . . . . . . . . 16

*Clover v. Total Sys. Serv., Inc.,* 176 F.3d. 1346 (11th Cir, 1999) . . . . . . . . . . 15, 16

*Doe v. Dekalb County School Dist.*, 145 F.3d 1441 (11th Cir. 1998) . . . . . . . . . . 13

*Gupta v. Florida Board of Regents, et al.,* 212 F.3d 571 (11th Cir. 2000) . . . 14, 17

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir.1999) . . . . . . . . . . . . 8

*Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. Kenworth of Dotham, Inc.*, 277 F.3d 1269 (11th Cir. 2002) . . . . . . . . . 6

*Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999) . . . . . . . . . . . . 6, 7, 8, 9, 17

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . 10

*Robinson v. City of Pittsburgh,* 120 F.3d 1286 (3rd Cir. 1997) . . . . . . . . . . . . . 13

iii

*Shaw v. Conn. Gen. Life Ins. Co*., 353 F.3d 1276 (11th Cir. 2003) . . . . . . . . . . . 4

*Smelter v. Southern Home Care Servs., Inc.,* 904 F.3d 1276 (11th Cir. 2018) . . . . 6

*Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355 (10th Cir.1997) . . . . . . . . . . . 9

*Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270 (11th Cir. 2002) . . . 15

*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998) . . . . . . . . . . 13

*Wynn v. Paragon Sys., Inc.*, 301 F. Supp. 2d 1343 (S.D. Ga. 2004) . . . . . . . . . . 13

**Federal Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

iv

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over Appellant's Complaint alleging violations of Title VII pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1291, because the summary judgment order and the subsequent judgment granted dismissal to Appellee as to all of Appellant's claims and thus constituted a "final decision" under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### I.    *Statement of Facts*

Plaintiff Tyler Copeland worked as a Lieutenant with the Georgia Department of Corrections at Rogers State Prison in Reidsville, GA. (Doc. 46-3 at 17). Plaintiff was born a biological female and was formerly named Cassandra Copeland (Doc. 46-3 at 27).     In 2017, Plaintiff began hormone replacement therapy and began his transition from female to male. (Doc. 46-3 at 29). In August, 2018, Plaintiff legally changed his name from Cassandra to Tyler Copeland and began identifying as a male. (Doc. 46-3 at 28-29).

1

Plaintiff notified the GDOC Human Resources ("HR") Department of his name change, spoke with Becky Johnson, and provided her with copies of the paperwork reflecting the same. (Doc. 46-3 at 30-32). Ms. Johnson told Plaintiff she would need a birth certificate that reflected his name and gender change. (*Id.*) Plaintiff gave Ms. Johnson these documents, but there was a delay in his name change because HR required that Plaintiff meet with HR Director Betsy Thomas. (*Id.*)

When Plaintiff notified Human Resources Director Betsy Thomas of his legal name change and transgender status, a meeting was held with all employees at Rogers State Prison to inform them of Plaintiff's transition and to inform the employees to address Plaintiff with male pronouns and/or as Sgt. Copeland. (Doc. 46-3 at 113). The Georgia Department of Corrections has a policy that prohibits sexual harassment. (Doc. 46-3 at 107; Doc. 46-4 at 1-7). The Plaintiff was aware of the policy (Doc. 46-3 at 32-33).

Plaintiff contends that following his transition to a male identity, he became subject to a hostile work environment and to harassment by being referred to as Ma'am and she. (Doc. 46-3 at 32-37; Doc. 46-3 at 113). Plaintiff alleges he "was aware of coworkers discussing his personal information, and spreading rumors and gossip, outside of his presence." (Doc. 63 at 3). He also alleges his supervisors were

2

involved in the harassment - one supervisor even called him names such as "baby girl" on a regular basis. (*Id.*)

On August 23, 2019, Plaintiff had a confrontation with a female officer who told Plaintiff that she was proud to be a woman and was offended when he told people not to call him Ma'am or she.  (Doc. 46-3 at 118).  A few days later, Plaintiff filed a complaint against the female officer which was investigated by the Department of Corrections.  (Doc. 46-3 at 55; Doc. 46-5 at 2-62).

Between the time the Plaintiff came out as transgender in September, 2018 and 2020 when he was promoted to Lieutenant, Plaintiff submitted four or five Lieutenant applications and submitted a transfer request to Treutlen PDC as a Sergeant (Doc. 46-3 at 59).  Although Plaintiff was denied the promotion on four or five occasions, the Plaintiff does not know who made the decision not to promote him on those occasions.  (Doc. 46-3 at 65).  Plaintiff does not know if the decision makers on the Lieutenant promotions for which he was denied had any knowledge of Plaintiff's allegations or complaints of harassment.  (Doc. 46-3 at 64, 66-67).

On September 30, 2019, Plaintiff submitted his Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") alleging ongoing harassment, hostile work environment, and disparate treatment, all based on sex and gender identity. (Doc. 63 at 4).   The EEOC issued its dismissal and notice of rights, which

3

Plaintiff received on March 18, 2020. (*Id.*)  Plaintiff filed this suit on June 9, 2020, alleging 4 claims: (1) Title VII harassment and hostile work environment; (2) Title VII failure to promote; (3) Title VII retaliation; and (4) failure to pay overtime in violation of the FLSA. (*Id.*)

## II.    *Course of Proceedings*

Following discovery, Appellee moved for summary judgment.  (Doc. 46). The District Court granted summary judgment to Appellee on August 22, 2022.  (Doc. 63). Appellant timely filed a notice of appeal on September 12, 2022. (Doc. 66).

## III.    *Standard of Review*

Appellate courts review summary-judgment orders *de novo*. *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003). Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

4

## SUMMARY OF THE ARGUMENT

The trial court did not err when it granted Defendant's Motion for Summary Judgment on Plaintiff's claims alleging sexual discrimination under Title VII.   The trial court correctly held that Plaintiff did not establish harassing conduct of a sufficiently severe and pervasive nature to alter the terms or conditions of his employment and therefore had no claim for a hostile work environment under Title VII.

In addition, the trial court correctly held that Plaintiff failed to establish a causal connection between protected activity and the decision not to promote Plaintiff, thereby making Plaintiff's failure to promote and retaliation claims fail. The trial court correctly granted summary judgment on both claims and should be affirmed.[1]

---

[1]The trial court also granted summary judgment on Plaintiff's claims under the FLSA on the grounds of sovereign immunity pursuant to the Eleventh Amendment. Plaintiff did not appeal that portion of the trial court's Order.

5

## ARGUMENT AND CITATION OF AUTHORITY

### I.   *The Trial Court correctly granted summary judgment on Plaintiff's Title VII hostile environment claim*

"To prove a hostile work environment claim, an employee must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smelter v. Southern Home Care Servs., Inc.,* 904 F.3d 1276, 1284 (11th Cir. 2018)(internal quotation and citation omitted). To make a *prime facie* allegation of such conduct, plaintiff must allege "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . ., ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dotham, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza v. Borden*, 195 F.3d

1238, 1246 (11th Cir. 1999). "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). In determining whether harassment is objectively severe and pervasive, courts consider "the frequency of the conduct," "the severity of the conduct," "whether the conduct is physically threatening or humiliating, or a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

In the present case, Plaintiff's allegations fail to meet the standard required to show that the workplace harassment was objectively severe or pervasive enough to create an abusive working environment. The Plaintiff's contentions that he was referred to as Ma'am or she by co-workers is simply insufficient to constitute an abusive working environment. The Plaintiff was born a biological female and acknowledged in his deposition that there are different definitions of what fully transitioning to a male means. (Doc. 46-3 at 28). Furthermore, the incident with Lt. Holland wherein she confronted Plaintiff and told him that she was proud to be a

7

female would not constitute harassment or create a discriminatorily abusive working environment.

In his deposition Plaintiff was asked questions concerning a document that was produced during discovery which details the harassment that he contends was hostile after he announced his transition from female to male. Plaintiff contends that in an addition to the allegations contained in the document, which is attached as Exhibit "2" to Plaintiff's deposition, there was radio traffic where he was referred to as Ma'am or she by other employees. (Doc. 46-3 at 40-41; Doc. 46-3 at 113-119). Those allegations are simply insufficiently severe or pervasive enough to support a harassment claim.

The *Mendoza* court performed an exhaustive review of behavior found to be insufficiently severe or pervasive to support a harassment claim by other courts, much of which is far more troublesome than the behavior at issue here:

> *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264–67 (5th Cir.1999) (noting it was "dubious" whether several sexually oriented comments and gestures and an implied threat of retaliation for refusing a sexual advance would be sufficient to establish a hostile environment) . . . *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir.1998) (holding actions insufficient to support hostile environment claim where

8

co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365–66 (10th Cir.1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can") . . . *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823–24 (6th Cir.1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes . . .) *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months . . . ) . . . *Mendoza*, 195 F.3d at 1246-47.

As illustrated by the foregoing cases, the behavior at issue here falls far short of meeting the severe-and-pervasive standard.

9

The trial court correctly found that the conduct alleged by Plaintiff was insufficiently severe or pervasive to support a harassment claim.   The Court examined the four factors set out by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) and determined that the Plaintiff failed to meet the requirements to show that the conduct was objectively severe and pervasive. (Doc. 63 at 11).

First, the Court looked at the frequency at the discriminatory conduct.

"Upon review of Plaintiff's documented harassment, over the period of a year from September 2018 when Plaintiff changed his name until the filing of his EEOC charge in September 2019, there were about 17 recorded instances. (Doc. 46-3, at 113-119.) Quite a few of the occurrences fail to provide any connection to Plaintiff's transgender status; for example, an officer looking directly at Plaintiff while reprimanding him and his co-workers has no apparent tie to Plaintiff being transgender. (Id. at 117.) Nevertheless, even accepting all of the actions as harassment, it does not seem frequent enough to meet the Nat'l R.R. Passenger Corp factors." (Doc. 63 at 13-14).

The Court then went on to examine the severity of the conduct and correctly held that "[a]lthough the Court finds Plaintiff's co-workers and supervisors were rude

10

in their statements and treatment of his transition, the actions fall short of conduct so severe it alters Plaintiff's working conditions."  (Doc. 63 at 15-16).

With regard to the third factor; whether the conduct was physically threatened or humiliating, the Court concluded that there were only two occurrences that could be perceived as physically threatening, and there is no evidence of any humiliation of the Plaintiff.

As stated by the Court,

"First, Officer Holland pushed Plaintiff because she was 'proud to be a woman.' (Doc. 58, at 13-14.) While this involved physical contact, it was investigated by the GDOC, which determined Officer Holland pushed Plaintiff 'on the shoulder in [a] joking manner as she has done several times to staff she considers her friend,' and the video footage did not appear aggressive in nature. (Doc. 46-5, at 4.) The second occurrence was another officer that 'proceeded to walk up behind [Plaintiff] and slap [him] on [his] right shoulder firmly with her right hand.' (Doc. 46-3, at 118.) There is no evidence this was done in a harassing manner, so the Court will not find the conduct rose to the level of physically threatening or humiliating." (Doc. 63 at 16).

11

Finally, with regard as to whether the conduct had reasonably interfered with the work performance, the Court noted:

"There is no evidence the harassment interfered with Plaintiff's work conditions - in fact, as of the filing of the Complaint, Plaintiff was promoted to lieutenant and still worked at Rogers State Prison. (Compl., at 2; Doc. 46-3 at 16.)" (Doc. 63 at 16).

The trial court properly analyzed this case under the applicable legal standard and correctly held that Plaintiff could not show that the conduct complained of was sufficiently severe and pervasive to alter the conditions of his employment. The trial court should be affirmed.

## II.    *The Trial Court correctly granted summary judgment on Plaintiff's Title VII failure to promote and retaliation claims.*

In order to establish a prima facie case for retaliation under Title VII, a claimant generally must show that (1) she engaged in statutorily protected activity; (2) she suffered the type of materially adverse action that would dissuade a reasonable employee from engaging in the statutorily protected activity; and (3) there was a causal relationship between the events. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). In order to prove that she engaged in "statutorily protected

activity," a plaintiff must show that she "oppose[d] an unlawful employment practice." *Wynn v. Paragon Sys., Inc.*, 301 F. Supp. 2d 1343, 1354 (S.D. Ga. 2004).

In the present case, the Plaintiff cannot establish that he suffered an adverse employment action.    "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3ʳᵈ Cir. 1997) (citation and internal marks omitted).    Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantially . . . to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11ᵗʰ Cir. 1998).  In evaluating what actions meet that required level of substantiality, we recognize that "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10ᵗʰ Cir. 1999) (citation omitted). Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, *id.* at 1178, using both a subjective and an objective standard, *see Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448-49 (11ᵗʰ Cir. 1998)(recognizing that the subjective

13

requirement is virtually almost always satisfied and imposing an objective requirement, as well."

The only arguable adverse employment action that the Plaintiff has identified is Defendant's failure to promote him to the rank of Lieutenant after he came out as identifying as a male in August, 2018.    (Doc. 1, ¶¶84-86).   The Plaintiff was promoted to Lieutenant in April, 2020 and was employed as a Lieutenant with the Department of Corrections at all times relevant to this case. (Doc. 46-3 at 17, 26). However, Plaintiff admitted that he did not know whether the decision makers for the Lieutenant positions for which he applied and was not hired had any knowledge of Plaintiff's allegations or complaints of harassment.    (Doc. 46-3 at 64, 66-67). Therefore, Plaintiff cannot prove a causal connection that is required for either a failure to promote or retaliation claim.   "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."   *Gupta v. Florida Board of Regents, et al.,* 212 F.3d 571, 590 (11th Cir. 2000).    (internal citation omitted).   "Discrimination is about actual knowledge , and real intent, not constructive knowledge and assumed intent.   When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions

14

of the decision-maker." *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir. 2002)(internal citations omitted.)

Since Plaintiff cannot show that the decision makers for the Lieutenant positions for which he was not hired had knowledge of his complaints of discrimination, his failure to promote and retaliation claims fail as a matter of law.

The trial court properly analyzed the retaliation claim as follows:

"Plaintiff, in his deposition, admitted he was unaware who made the hiring decisions for his department. (Doc. 46-3, at 64.) Further, when asked if the decision makers had information about his complaints, he responded: 'I'm sure they did. But can I confirm that they did? No.' (Id.) He admits his assumption is pure speculation and later explains he is unable to name the people responsible but believes they 'were most certainly aware.' (Id.; Doc. 58, at 14.) The Court finds Plaintiff's evidence insufficient to establish the decision makers for a promotion to lieutenant were aware of his protected activity. As Plaintiff admits, 'it would be pure speculation' to infer the decision makers actually knew about his complaints. See Clover, 176 F.3d at 1355. Plaintiff is required to prove the decision maker was actually aware of the protected activity at the time it took adverse action, and here, Plaintiff fails to meet that

15

burden. See Id. at 1354. As held in Clover, there is a key difference between 'could have told' and 'did tell' in terms of decision makers having information, and here there is no evidence of who the decision makers were or what they knew. *Id*. at 1355." (Doc. 63 at 20)(citing to *Clover v. Total Sys. Serv., Inc.,* 176 F.3d. 1346 (11th Cir, 1999)).

The trial court properly analyzed the Plaintiff's failure to promote and retaliation claim and should be affirmed.


**III.    *Section III of Appellant's Brief does not provide a basis for a reversal of the trial court.***

In Section C of Appellant's Brief, he argues that the Court's decision deprives him of his right to a trial by jury.    (Pl's Brief at 45).    However, Plaintiff acknowledges that summary judgment is applicable to employment discrimination claims. *(Id.* at 47; citing *Chapman v. AI Transport,* 229 F.3d. 1012 (11th Cir. 2000)). The Plaintiff goes on to cite statistics showing that the Southern District of Georgia has a high dismissal rate.    These statistics in and of themselves are meaningless and may simply show that there are a lot of meritless claims filed in the Southern District.

16

As shown above, the trial court properly analyzed Defendant's Motion for Summary Judgment under existing precedent and correctly found that Defendant was entitled to summary judgment under the applicable law.


**IV.     The Amicus Curiae Brief filed by the United States does not offer a ground for reversal of the trial court's Order.**

The United States filed a brief as Amicus Curiae in support of Plaintiff and urges the Court to reverse the trial court's Order as it pertains to the hostile environment claim filed by Plaintiff.   The brief does not address Plaintiff's failure to promote and retaliation claim and instead only focuses on the hostile environment claim.

It is unknown to Defendant why the United States has taken a position in this garden variety Title VII case.   Regardless, as set out in Sections I and II, *supra*, the trial court correctly analyzed the Title VII claims set forth in this case and properly granted summary judgment to the Defendant.   *See*, *Mendoza v. Borden, 195 F.3d 1238 (11th Cir. 1999); Gupta v. Florida Board of Regents, et al.*, 212 F.3d 571 (11th Cir. 2000).   Therefore, the trial court should be affirmed.

17

## CONCLUSION

For the foregoing reasons, the Judgment of the District Court should be affirmed.

Respectfully submitted this 20th day of January, 2023.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar Number: 113601
BROWN, READDICK, BUMGARTNER
CARTER, STRICKLAND & WATKINS, LLP
Special Assistant Attorney General
ATTORNEY FOR APPELLEE
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521-0220
(912) 264-8544
(912) 264-9667 FAX
tcarter@brbcsw.com

18

## CERTIFICATE OF COMPLIANCE

The undersigned attorney, counsel for Appellee, certifies that this brief complies with the type volume limitation set forth in FRAP 32(a)(7)(B). Pursuant to FRAP 32(a)(7)(C)(I), the undersigned further certifies that the foregoing brief contains 4476, exclusive of those portions of the brief which are not considered for word count purposes, as measured by the word count of the word processing system used to prepare the brief (Corel Word Perfect 12.0 for Windows). The type size and style used in this brief is 14-point Times New Roman.

Respectfully submitted, this 20th day of January, 2023.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar No. 113601
tcarter@brbcsw.com

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
P. O. Box 220
Brunswick, GA 31521
(912) 264-8544

CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties with a copy of the foregoing pleading, by depositing same in the United States mail with adequate postage thereon to assure delivery to:

Kenneth E. Barton, III, Esq.
Cooper, Barton & Cooper, LLP
170 College Street
Macon, GA   31201

Tovah R. Calderon, Esq.
Jason Lee, Esq.
Kristen Clarke, Esq.
Department of Justice, Civil Rights Division
Ben Franklin Station
P. O. Box 14403
Washington, DC 20044

This 20th day of January, 2023.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar Number: 113601
BROWN, READDICK, BUMGARTNER
CARTER, STRICKLAND & WATKINS, LLP
Special Assistant Attorney General
ATTORNEY FOR APPELLEE
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521-0220
(912) 264-8544
(912) 264-9667 FAX
tcarter@brbcsw.com

20